IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JAMES WEBB, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:16-cv-00080-W-FJG |
| FARMERS OF NORTH AMERICA, INC., and JAMES MANN, | ) |
| Defendants. | ) |

## ORDER

Currently pending before the Court is defendants' Farmers of North America, Inc. ("FNA") and James Mann's ("Mann"), Motion to Dismiss for Lack of Subject Matter jurisdiction (Doc. No. 33). Also before the court is plaintiff's motion to file a surreply in opposition to defendants' motion to dismiss (Doc. No. 39). As an initial matter, the Court finds a surreply to be unnecessary and **DENIES** plaintiff's motion for leave to file same (Doc. No. 39).

## I. BACKGROUND

On February 1, 2016, plaintiff filed the present suit in the United States District Court for the Western District of Missouri. After some time, on July 27, 2016 Plaintiff executed service in accordance with The Hague Service Convention upon Defendant FNA in Saskatoon, Saskatchewan. The defendant FNA is the spinoff of a Canadian company by the similar name, Farmers of North America, hereinafter "FNA Canada"; the like businesses' plan is to provide a subscription-based membership organization, "like a COSTCO or SAM'S CLUB, that used a membership structure to enhance buying power and pricing of commonly used and desired farming products and needs." (Doc. No. 25 at 4). The plaintiff alleges in his First Amended Complaint ("FAC") (Doc. No. 25), that defendants FNA and Mann, the CEO of FNA, (1) breached the employment

contract; (2) made fraudulent misrepresentations in the employment negotiations; and (3) intentionally interfered with the rights of the plaintiff.

Plaintiff claims in the FAC this Court has diversity jurisdiction over this case, as plaintiff is a Missouri citizen, and FNA is incorporated in Delaware.[1] Defendants subsequently filed their motion to dismiss for lack of subject matter jurisdiction (Doc. No. 33), which also argues that in the event the court finds subject matter jurisdiction exists, the court should compel the parties to arbitrate as per the employment agreement between the parties. Defendant also seeks the dismissal of Count III – intentional interference – as a matter of law.

## II. DISCUSSION

*A. Diversity Jurisdiction.*

1. Standard

Motions to dismiss for lack of subject matter jurisdiction are governed by Rule 12(b)(1). Additionally, 28 U.S.C. § 1332(a)(1) states that the district courts shall have original jurisdiction in civil actions between citizens of different States when the amount in controversy exceeds $75,000. "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." One Point Solutions, LLC v. Borchert, 486 F.3d 342, 436 (8th Cir. 2007)(citing Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S.Ct. 2396 (1978)).

The plaintiff shall have the "burden to establish the factual bases for the subject matter jurisdiction plaintiff invokes." Wilkerson v. Mo. Dep't of Mental Health, 279 F. Supp. 2d 1079, 1080 (E.D. Mo. 2003) (citing Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990). Corporations have dual citizenship for diversity purposes, both the state of its incorporation and the location of its "principal place of business." 28 U.S.C. §

---

[1] Mann is a citizen of Canada.

1332(c)(1). In Hertz Corp. v. Friend, 130 S.Ct. 1181 (2010), the Supreme Court adopted the "nerve center" test to clarify the principal place of business, that is "where a corporation's officers direct, control and coordinate the corporation's activities." Hertz, 130 S.Ct. at 1192.

It is also well established that "[w]here there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." Connoly v. Taylor, 27 U.S. 556, 565 (1829); see also Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004); Centrue Bank v. Golf Disc. of St. Louis, Inc., No. 4:10CV16 TIA, 2010 WL 4178942, at *2 n.1 (E.D.Mo. 2010) ("For purposes of diversity jurisdiction, the Court analyzes citizenship as of the date that the Complaint was filed." (Internal citations omitted)).

2. Analysis

In their motions, the parties dispute the location of FNA's nerve center. "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). Here, defendants challenge that FNA's principal place of business, although being incorporated in Delaware, is located in the same state as the plaintiff's citizenship, in Missouri. To advance their theory, defendants allege that plaintiff Webb, the former COO of FNA, used his home address as FNA's 'principal place of business' when registering to do business in Missouri (Doc. No. 33-1, at 3). Defendants argue that plaintiff ran the company from Missouri, exemplified by plaintiff's registering of a post office box, writing the initial marketing and business plans and performing the initial hiring decisions, all from Missouri (Doc No. 36, at 3-4, citing Aff. of James Webb (Doc. No. 35-1)).

In response, the plaintiff argues that FNA, much like its spinoff-model FNA Canada, is controlled by citizens of Canada, in Canada. "It was there that life was given to any idea or project, approval was given to any action, but most important, funding was provided or declined for any expenditure concerning FNA." (Doc. No. 35, at pg. 3).

Both parties present considerable arguments as to the location of the nerve center during the start-up's beginning and duration. However, for purposes of diversity jurisdiction, the law looks to the principal place of business at the time of filing the complaint. <u>Golf Disc. of St. Louis, Inc.</u>, 2010 WL 4178942, at *2. Accordingly, in this instance, even if the principal place of business had been located Missouri at some point during the entity's duration, it is clear that the nerve center moved to Canada prior to the filing of this lawsuit. Here, Plaintiff states in his first amended complaint that he was directed by Defendant Mann to terminate the entire staff in April 2015 and that he, the plaintiff, was terminated on June 19, 2015. "Seven months following the meeting with Mann where Plaintiff was directed to terminate his staff, all remaining AC US [FNA's sister company] personnel were also terminated and AC US was shut down on September 28, 2015[,] [sic] [w]iping out the $3,000,000 investment that FNA Canada had made in launching AC US . . . ." (Doc. No. 25, at 12). By the time this suit was filed on February 1, 2016, Missouri operations had ceased, and the remaining control of the entity (such as the decision to terminate the Plaintiff) was with the CEO, defendant Mann in Canada. Thus, neither defendant is a Missouri citizen for purposes of diversity jurisdiction.

Therefore, for the foregoing reasons, defendants' motion to dismiss for lack of jurisdiction is **DENIED**.

*B. Arbitration.*

    1. Standard

"A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." 3M Co. v. Amtex Security, Inc., 542 F.3d 1193, 1198 (8th Cir. 2008)(citations omitted). The Supreme Court has interpreted the Federal Arbitration Act ("FAA") as ensuring the enforceability of arbitration agreements. See Bass v. Carmax Auto Superstores, Inc., 2008 WL 2705506 (W.D.Mo. July 9, 2008)(citing Mastobuono v. Shearson-Lehman Hutton, Inc., 514 U.S. 52 (1995); Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1 (1983)). The central purpose of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." Mastobuono, 514 U.S. at 54. While the FAA sets forth a "liberal federal policy favoring arbitration agreements," a party may not be forced to arbitrate its dispute without an agreement to do so. Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1,23, 103 S. Ct. 927 (1983).

"The Supreme Court has found questions of arbitrability presumptively for a court to decide to include whether the parties are bound by an arbitration agreement and whether an arbitration agreement applies to a particular type of controversy." Woods v. Caremark PHC, L.L.C., 198 F.Supp.3d 1046, (W.D. Mo. Aug. 02, 2016) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S.Ct. 588, 154 (2002)); See also Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC, 641 F.3d 263, 266 (8th Cir .2011) ("[W]hen deciding whether to compel arbitration, a court asks whether a valid agreement to arbitration exists, and if so, whether the dispute falls within the scope of that agreement.") However, "[w]here a broad arbitration clause is in effect, even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration." Larry's United Super, Inc. v. Werries, 253 F.3d 1083 (8th Cir. 2001).

2. Analysis

The Court first turns to whether the arbitration agreement is valid. This question "is a matter of state contract law." Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004). Here, the parties specified that Delaware law controls:

> Notwithstanding that any of the parties hereto may now, or at any time during the term of this Agreement, be domiciled outside of the State of Delaware, United States of America, this Agreement shall be regarded for all purposes as a Delaware, United States of America document and the validity and construction hereof, and all acts and payments required hereunder, shall be determined and governed, in all respects, by the laws of the State of Delaware, United States of America.

Employment agreement between FNA and James Webb (Doc. No. 1-3, at 8).

In PVI, Inc. v. Ratiopharm GmbH, 253 F.3d 320, 329 (8th Cir. 2001), the Eighth Circuit, applying Missouri choice of law principals in a contractual dispute between Missouri and Delaware citizens, held that "contractual rights were substantive and therefore Missouri law dictated that Delaware law should govern." Under Delaware law, as to questions regarding "substantive arbitrability" or the threshold question of validity of the arbitration agreement, Delaware law "adopt[s] the majority federal view that reference to the American Arbitration Association ("AAA") rules evidences a clear and unmistakable intent to submit arbitrability issues to an arbitrator." James & Jackson, LLC v. Willi Gary, LLC, 906 A.2d 76, 80 (Del. 2006). Here, the arbitration provision exclusively mandates AAA rules apply:

> Webb and FNA agree to first mediate all disputes in good faith and may then submit to binding arbitration any claims that they may have against each other, of any nature whatsoever, other than those prohibited by law or for workers compensation, unemployment or disability benefits, *pursuant to the rules of the American Arbitration Association.* Webb agrees to this alternative dispute resolution process as a condition of employment.

Employment agreement between FNA and James Webb (Doc. No. 1-3, at 8)(emphasis added).

6

Furthermore, the broad language of the contract provision demonstrates that the validity questions shall go before the arbitrator. The parties "may then submit to binding arbitration any claims that they may have against each other, of any nature whatsoever . . . . Webb agrees to this [ADR] as a condition of employment." (Doc. No. 1-3, at 8). Therefore, along with plaintiff's causes of actions, any claims as to the validity or scope of the arbitration provision will go to the arbitrator in the first instance.

Given that the parties have already completed a mediation of this matter, the Court finds that defendants' motion to compel arbitration must be **GRANTED.**

### III. CONCLUSION

For these reasons, the Court hereby **DENIES IN PART** Defendant's Motion to dismiss for lack of subject matter jurisdiction. The alternative motion to compel arbitration is hereby **GRANTED**. It is **ORDERED** that proceedings in this case are stayed pending arbitration. It is further **ORDERED** that the parties shall file a Joint Status Report on or before **January 16, 2018**, and every six months thereafter until the matter is concluded. All remaining motions are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Date:  July 13, 2017                       **/S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                       Fernando J. Gaitan, Jr.
                                                         United States District Judge